UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| ROBERTO A. CALDERON, | No. 2:19-cv-00096-MCE-KJN |
| --- | --- |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS ON PARTIES' CROSS-MOTIONS FOR SUMMARY JUDGMENT |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

Plaintiff seeks judicial review of a final decision by the Commissioner of Social Security denying plaintiff's application for Title II Disability Insurance Benefits.[1] In his summary judgment motion, plaintiff primarily contends the Administrative Law Judge ("ALJ") erred in weighing medical evidence and testimony regarding plaintiff's mental impairments. The Commissioner opposes plaintiff's motion and filed a cross-motion for summary judgment.

After considering the parties' written briefing, the record, and the applicable law, the court recommends DENYING the Commissioner's motion for summary judgment, GRANTING plaintiff's motion for summary judgment, and REMANDING this case for further proceedings.

////

////

---

[1] This action was referred to the undersigned pursuant to Local Rule 302(c)(15) for findings and recommendations.

1

## I. BACKGROUND AND ALJ'S FIVE-STEP ANALYSIS[2]

On June 24, 2015, plaintiff applied for Title II Disability Insurance Benefits alleging disability beginning March 6, 2012. (Administrative Transcript ("AT") 194-200.) Plaintiff claimed to suffer from general pain and soreness partially due to a prior surgery, hearing loss, depression, and anxiety. (AT 219.) Plaintiff's application was denied initially and again upon reconsideration. (AT 111-15, 117-21.) Plaintiff, aided by an attorney, sought review of these denials with an ALJ. (AT 124–25.) At a June 27, 2017 hearing, the ALJ received testimony from plaintiff about his conditions, as well as testimony from a vocational expert regarding plaintiff's ability to work. (AT 41-72.)

On January 12, 2018, the ALJ issued a decision finding that plaintiff was not disabled for the relevant period. (AT 15-40.) At step one, the ALJ concluded plaintiff had not engaged in substantial gainful activity since March 6, 2012. (AT 23.) At step two, the ALJ found plaintiff had the following severe impairments: bilateral carpal tunnel syndrome and major joint dysfunction. (Id.) However, the ALJ determined at step three that these impairments did not meet or medically equal the severity of a listed impairment. (AT 28 (citing 20 C.F.R. Part 404, Subpart P, Appendix 1).)

---

[2] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program. 42 U.S.C. §§ 401 et seq. Disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. § 423(d)(1)(a). A parallel five-step sequential evaluation governs eligibility for benefits. See 20 C.F.R. §§ 404.1520, 404.1571–76; Bowen v. Yuckert, 482 U.S. 137, 140–42 (1987). The following summarizes the sequential evaluation:
> **Step one**: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> **Step two**: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> **Step three**: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> **Step four**: Is the claimant capable of performing her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
> **Step five**: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995). The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

Based on these conclusions, the ALJ found plaintiff had the residual functional capacity ("RFC") to perform medium work,

> except with the left non-dominant upper extremity the claimant could occasionally engage in pushing or pulling or operation of hand controls; reach overhead with the left non-dominant upper extremity; occasionally never climb ladders, ropes, or scaffolds; occasionally climb ramps or stairs; never work around concentrated excessive amounts of fumes, odors, dust, gases, smoke, or other environmental irritants; never work around hazards such as moving dangerous machinery or unprotected heights; and never operate motor vehicles. The claimant can engage in simple reading, writing, speaking of basic English, nothing complex, technical, or scientific.

(AT 29, cleaned up.) In reaching this conclusion, the ALJ stated he considered all symptoms and opinion evidence, as per the applicable regulations. (Id.) At step four the ALJ found that plaintiff could not perform his past relevant work (AT 33), but at step five the ALJ found that jobs existed in significant numbers that plaintiff could have performed. (AT 34.)

On November 16, 2018, the Appeals Council denied plaintiff's request for review. (AT 1–8.) Plaintiff then timely filed this action requesting judicial review of the Commissioner's final decision, and the parties filed cross-motions for summary judgment. (ECF Nos. 1, 16, 17, 18.)

## II. STANDARD OF REVIEW

The Court reviews the Commissioner's decision de novo, and should reverse "only if the ALJ's decision was not supported by substantial evidence in the record as a whole or if the ALJ applied the wrong legal standard." Buck v. Berryhill, 869 F.3d 1040, 1048 (9th Cir. 2017). Substantial evidence is more than a mere scintilla, but less than a preponderance; i.e. "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Id. The court will uphold the ALJ's conclusion where "the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008). Further, the court may not reverse the ALJ's decision on account of harmless error. Buck, 869 F.3d at 1048.

////

////

## III. ISSUES PRESENTED

Plaintiff primarily alleges the ALJ erred by not adequately assessing plaintiff's mental impairments. Plaintiff also disputes the ALJ's finding that plaintiff can perform medium work and the rejection of his subjective-symptom testimony. (ECF No. 16.) The Commissioner counters each of plaintiff's arguments, contending that substantial evidence supports the ALJ's analysis and conclusion. (ECF No. 17.) Thus, the Commissioner maintains the opinion should be affirmed. (Id.)

## IV. DISCUSSION

Because plaintiff's argument that the ALJ improperly assessed plaintiff's mental impairments requires remand, the court focuses on that issue.

An impairment or combination of impairments may be found "not severe *only if* the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." Webb v. Barnhart, 433 F.3d 683, 686 (9th Cir. 2005) (emphasis in original) (internal citation omitted). "[T]he step-two inquiry is a de minimis screening device to dispose of groundless claims." Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996). "[A]n ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when his conclusion is 'clearly established by medical evidence.'" Webb, 433 F.3d at 687 (quoting S.S.R. 85–28). The ALJ's step two error may be harmless if the ALJ properly considered the impairments in claimant's RFC determination. See Lewis v. Astrue, 498 F.3d 909, 911 (9th Cir. 2007) (the failure to address an impairment at step two is harmless if the RFC discussed it in step four).

In disability benefits cases, courts "'distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians).'" Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014) (quoting Lester v. Chater, 81 F.3d 821, 830 (9th Cir.1995)). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." Id. When an ALJ

does not put forth specific, legitimate reasons for crediting one medical opinion over another, he errs. Id.

Plaintiff asserts that the ALJ erred in evaluating his mental impairment because the ALJ: (1) improperly discounted the examining opinions of Drs. Boyd and Kalman; (2) improperly discounted the opinions of plaintiff's treating sources; and (3) improperly relied on lay evidence of plaintiff's daily activities.[3] (ECF No. 16 at 32-37.)

1. *Drs. Boyd & Kalman's Opinions*

Plaintiff first contends that the ALJ erred in discounting the opinions of Drs. Boyd and Kalman. (ECF No. 16 at 32, 35.)

Dr. Boyd, an examining source, opined that plaintiff suffered from severe depression and anxiety. (AT 1762). Tests performed by Dr. Boyd indicated that plaintiff was depressed, disorganized, isolated, anxious, and withdrawn. (AT. 1760.) Dr. Boyd also had plaintiff perform basic cognitive exercises—remembering a simple address and counting sevens and threes sequentially. (AT 1759.) As a result of those tests, Dr. Boyd judged plaintiff's attention span and short-term memory to be intact. (Id.) Dr. Boyd concluded that plaintiff was in the middle of the moderate symptoms range of the GAF, and that plaintiff's psychological testing placed him in the "severely impaired range" although plaintiff was "apparently functioning better than that in his day-to-day life." (AT 1764.) Dr. Boyd performed two tests on plaintiff to measure any potential malingering. Both tests found plaintiff had not exaggerated his symptoms or malingered. (AT 1763.)

The ALJ provided the following rationale for discounting Dr. Boyd's opinions: "Dr. Boyd's extreme opinion is not consistent with the claimant's performance on mental tasks with Dr. Boyd as well as Dr. Kalman. On both examinations, the claimant only had mild difficulty

---

[3] While these allegations of error occurred in step two, they affected the remainder of the ALJ's opinion concerning plaintiff's mental impairments, as, presumably, the reason plaintiff's mental impairments were not further discussed was because the ALJ discounted them in step two. See Lewis, 498 F.3d at 911. When an ALJ improperly discounts significant and probative evidence at step two, the resulting RFC can cause reversible error. See Hill v. Astrue, 698 F.3d 1153, 1161 (9th Cir. 2012).

with mental tasks. . . . In addition, Dr. Boyd himself stated that the claimant appeared to be stable psychiatrically." (AT 27.) Thus, the ALJ gave little weight to Dr. Boyd's opinion because of (1) plaintiff's performance on basic cognitive testing, and (2) Dr. Boyd himself opined that plaintiff was "stable psychiatrically."

The ALJ gave partial weight to Dr. Kalman's opinion. As the ALJ noted, Dr. Kalman found that plaintiff had a "decreased ability to maintain attention, concentration, and memory" and could only "carry out simple one and two-step job instructions." (AT 27.) The ALJ gave these findings little weight because they were not consistent with Dr. Boyd's finding that plaintiff could perform serial numbers and remember a simple address. (Id.) However, great weight was given to Dr. Kalman's opinion that plaintiff could withstand the stress of daily work due to "the fact that [plaintiff] was able to exhibit normal functioning despite undergoing significant stress from attending an upcoming hearing." (Id.)

The undersigned finds no basis for the ALJ to discount the opinion of Dr. Boyd due to Dr. Boyd opining that plaintiff "appear[ed] to be stable psychiatrically." (AT 1764, 27.) Stable, in this context, means unchanging. Dr. Boyd, who opined that plaintiff suffered from severe depression and anxiety (AT 1762), was therefore stating that the level of plaintiff's depression and anxiety—which he identified as severe—was unchanging. See Payne v. Astrue, 2011 WL 8878916, at *7 (W.D. Wash. Dec. 19, 2011), report and recommendation adopted, 2012 WL 122867 (W.D. Wash. Jan. 17, 2012) ("[A] statement that one is 'psychiatrically stable' without any further comment, does not necessarily show such an individual is without significant functional limitations, but rather may merely indicate the condition was unchanging at the time."). Accordingly, in opposition to the ALJ's rationale, the fact that plaintiff's symptoms were stable does not contradict Drs. Boyd's opinion, but rather supports it.[4] Therefore, Dr. Boyd's

---

[4] Even if Dr. Boyd opined that plaintiff was improving, that would not necessarily permit the ALJ to determine plaintiff's mental impairments were nonsevere. See Holohan v. Massanari, 246 F.3d 1195, 1205 (9th Cir. 2001) ("That a person who suffers from severe panic attacks, anxiety, and depression makes some improvement does not mean that the person's impairments no longer seriously affect her ability to function in a workplace.").

6

isolated statement that plaintiff was "stable psychiatrically" does not constitute a specific, legitimate reason for discounting an examining source.

The second rationale the ALJ used in discounting both Dr. Boyd's and Dr. Kalman's opinions—plaintiff's cognitive functioning tests—is overbroad. While plaintiff's ability to concentrate is an alleged symptom of his depression and anxiety, his performance on these tests does not negate the remainder of Drs. Boyd's and Kalman's findings. Based on results from these cognitive-memory tests, the ALJ summarily discounted Dr. Boyd's findings that have no relation to plaintiff's cognitive abilities. For example, the ALJ used these tests to discount Dr. Boyd's findings that: plaintiff's objective MMPI-2 scores were in the range associated with "fatigue weariness or boredom" and indicated that plaintiff was "depressed, disorganized, isolated, anxious, and withdrawn" (AT 1760); there "was an abundant volume of data supporting problems with anxiety"; objective testing showed that plaintiff was "in the severely depressed range" and the "severely anxious range" (AT 1762); and Dr. Boyd's conclusion that plaintiff was disabled from the date he had a panic attack at work (March 6, 2012) to the present. (AT 1767). Furthermore, plaintiff's performance on these tests should have no relation to plaintiff's allegation of frequent panic attacks, one of the primary reasons Dr. Boyd found plaintiff unable to return to work. (See AT 1769.) In short, plaintiff's performance on two cognitive tests does not detract from the doctors' objective testing that shows that plaintiff has severe anxiety and depression, and the symptoms related to these diagnosed impairments.

Regarding the ALJ's use of Dr. Boyd's testing to discount the same tests that Dr. Kalman performed, at best these two results present conflicting and ambiguous evidence. However, these "conflicting" tests do not clearly establish the nonseverity of plaintiff's alleged mental impairments. See Lomanto v. Astrue, 2009 WL 2603099, at *2 (C.D. Cal. Aug. 24, 2009) ("The record contains conflicting evidence, but the conflicts in the evidence do not 'clearly establish' the non-severity of Plaintiff's alleged mental problems"); Kendall v. Astrue, 2008 WL 5427644, at *2 (C.D. Cal. Dec. 31, 2008) ("To the extent the record contains conflicting evidence, any such conflicts do not 'clearly establish' the non-severity of Plaintiff's alleged mental impairments.").

Accordingly, the ALJ erred by improperly discounting the opinions of examining Drs. Boyd and Kalman.

2. *Plaintiff's Treating Sources and GAF Scores*

Next, plaintiff asserts that the ALJ erred in rejecting the opinions of his treating sources, partially expressed through GAF scores,[5] without sufficient justification. (ECF No. 16 at 35.) In rejecting the majority[6] of plaintiff's mental-health treating sources, the ALJ noted that "GAF scores are merely snapshots of an individual's condition at the time of the assessment, they do not necessarily reflect the claimant's overall mental abilities and limitations during the entire period in question or even the encounter during which the claimant was accessed." (AT 28.)

It is not an error for an ALJ to disregard a claimant's GAF score, as the Commissioner has determined the GAF scale does not directly correlate with the Social Security Administration's mental disorders listing. Doney v. Astrue, 485 Fed. App'x. 163, 165 (9th Cir. 2012); see also Farland v. Astrue, 288 Fed. Appx. 357, 359 (9th Cir.2008) (failure to address GAF scores "does not constitute legal error"). However, GAF scores can be a useful tool in determining a claimant's disability. See Garrison, 759 F.3d at 1003 n.4 ("Although GAF scores, standing alone, do not control determinations of whether a person's mental impairments rise to the level of a disability (or interact with physical impairments to create a disability), they may be a useful measurement."). Furthermore, courts in this Circuit have held that, "[a]lthough an ALJ need not discuss a GAF score in all instances . . . the ALJ must do so when, as here, he has not provided any rationale for otherwise rejecting a treating physician's opinion of a claimant's overall mental functioning, and such opinion—as expressed in a GAF score—clearly contradicts the ALJ's

---

[5] Plaintiff's GAF scores range from approximately 31 to 70, but generally fell within the 41 to 60 range. (AT 28.) "A GAF score is a rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment." Vargas v. Lambert, 159 F.3d 1161, 1164 n. 2 (9th Cir.1998). "According to the DSM–IV, a GAF score between 41 and 50 describes serious symptoms or any serious impairment in social, occupational, or school functioning." Garrison, 759 F.3d at 1003 n.4 (internal quotations omitted). "A GAF score between 51 to 60 describes moderate symptoms or any moderate difficulty in social, occupational, or school functioning." Id.

[6] The ALJ gave little weight to the opinion of another treating source, Dr. Yuger; an issue plaintiff does not directly raise on appeal. (AT 28.)

8

finding regarding the claimant's mental functioning." Roach v. Astrue, 2009 WL 2407961, at *4 (C.D. Cal. Aug. 5, 2009); accord Vanbibber v. Carolyn, 2014 WL 29665, at *2 (W.D. Wash. Jan. 3, 2014) (finding error because "the ALJ's decision contains a boilerplate discussion of why GAF scores do not correlate with a finding of disability but does not articulate any specific reason to reject Dr. Epp's GAF score").

As an initial matter, the ALJ's rationale for discounting GAF scores because they are "merely a snapshot of an individual's condition at the time of the assessment," is without merit. While this may be true in a case involving a small number of GAF scores, the ALJ's statement directly follows citation to 48 separate GAF scores within the record. These scores, and the records underlying them, do not represent a mere snapshot, but perhaps a more complete picture of plaintiff's alleged impairments.

Furthermore, the ALJ's rejection of the usefulness of these scores was an improper basis for rejecting the majority of the treating sources plaintiff saw for his mental impairments. Attacking the usefulness of GAF scores, generally, does not amount to a specific and legitimate reason necessary for rejecting the opinions of treating sources. See Garrison, 759 F.3d at 1012. For example, based on the rejection of GAF scores, the ALJ did not address reports from plaintiff's treating sources that plaintiff had impaired concentration (AT 1219, 1263, 1155), suffered moderately-severe depression (AT 608, 1150, 1260), and, during one session plaintiff had an "anxiety reaction" that resulted in him becoming tearful, having difficulty breathing, becoming hot, and being helped into a separate room where plaintiff spent 40 minutes decompressing. (AT 1566.)

Accordingly, the ALJ erred by failing to provide specific and legitimate reasons for rejecting the plaintiff's treating sources.

3. *Lay Evidence*

Finally, plaintiff contends the ALJ erred by relying on inaccurate and irrelevant representations regarding plaintiff's daily activities. (ECF 16 at 37.) A claimant's daily activities can be probative to determine the severity of his or her mental impairments. See Taylor v. Astrue, 386 F. App'x 629, 632 (9th Cir. 2010).

Here, while some of the activities that the ALJ cites appear slightly incongruent from the record, e.g., the ALJ states that plaintiff homeschools his son when the hearing transcript states that his son was "doing a home study" (AT 51), on remand plaintiff can further develop his case regarding any alleged inconsistency or inaccuracy.

## V. **CONCLUSION**

For the reasons stated above, the ALJ erred in weighing medical evidence regarding plaintiff's mental impairments, and this matter should therefore be remanded.

Regarding the remedy sought, the court recognizes plaintiff's general request to remand for benefits. See Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987). However, the undersigned cannot say that additional proceedings would have no utility. Dominguez v. Colvin, 808 F.3d 403, 407 (9th Cir. 2016). The ALJ failed to adequately account for all of plaintiff's mental limitations, which requires a "more detailed assessment" for plaintiff's RFC. See SSR 96-8p. It may be that plaintiff can perform relevant work despite his limitations—but this is for the ALJ, and not the court, to resolve. Edlund, 253 F.3d at 1156 ("The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities.").

Finally, this remand will require the ALJ to fully reassess plaintiff's RFC in light of the medical record. Thus, as to plaintiff's other arguments, the court is confident that the ALJ can adequately address plaintiff's contentions concerning step three, (ECF No. 16 at 38-41), plaintiff's ability to perform medium work (id. at 41-45), and plaintiff's testimony, (id. at pp. 45–47). Simply, on remand, the ALJ should carefully follow Ninth Circuit precedent in assigning weight, as well as "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [an] interpretation thereof, and making findings." Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989).[7]

---

[7] As already briefly mentioned, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion carries more weight than a non-examining physician's opinion. Holohan, 246 F.3d at 1201–02. To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. Lester, 81 F.3d at 831. A contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons. Id. at 830. An ALJ provides specific and

## **RECOMMENDATIONS**

Accordingly, IT IS HEREBY RECOMMENDED that:

1. The Commissioner's motion for summary judgment (ECF No. 17) be DENIED;

2. Plaintiff's motion for summary judgment (ECF No. 16) be GRANTED;

3. This matter be REMANDED for further administrative proceedings; and

4. The Clerk be directed to enter judgment in plaintiff's favor and close the case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **seven (7)** days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served on all parties and filed with the court within **seven (7)** days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

Dated: March 3, 2020

_/s/ Kendall J. Newman_
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

96.cald

---

legitimate reasons by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [an] interpretation thereof, and making findings." Magallanes, 881 F.2d at 751. In evaluating the extent to which an ALJ must credit the claimant's report of his symptoms, the Ninth Circuit follows the two–step analysis of (1) determining whether evidence of an impairment exists that could produce the symptoms alleged, then (2) examining the severity of these symptoms. Revels, 874 F.3d at 655 (quoting Garrison, 759 F.3d at 1014–15). To reject third-party reports of a claimant's impairments, the standard is much lower: an ALJ need only "give reasons that are germane to each witness." Id. (citing Molina v. Astrue, 674 F.3d 1104, 1114 (9th Cir. 2012)).

11